GORDON (SMITH v.). See Case No. 13,052.

---

## Case No. 5,621.

### GORDON v. SOUTH FORK CANAL CO. et al.

[1 McAll. 513.][1]

Circuit Court, N. D. California. Jan. Term, 1859.[2]

CONSTITUTIONAL LAW — IMPAIRMENT OF OBLIGATION OF CONTRACTS—LAWS AFFECTING THE REMEDY.

1. The legislatures of the states may pass laws which go to the remedy on past as well as on future contracts, provided they do not impair their obligation.

2. An alteration by law of a remedy to such extent as to materially affect a right vested under a prior contract, is unconstitutional.

[Cited in Midland Ry. Co. v. Wilcox, 122 Ind. 90, 23 N. E. 508; Smith Bridge Co. v. Bowman, 41 Ohio St. 48.]

[See note at end of case.]

[This was a suit in equity by George Gordon against the South Fork Canal Company.]

A bill was exhibited in this case to enforce a statutory lien and for other objects. The defendant filed a plea setting forth the invalidity of the lien sought to be enforced.

McDougal & Sharp and Hall McAllister, for complainant.

Crockett & Crittenden, for defendants.

[1] [Reported by Cutler McAllister, Esq.]
[2] [Reversed in 6 Wall. (73 U. S.) 561.]

McALLISTER, Circuit Judge. To the bill exhibited in this case a demurrer was filed; and it was sustained by the court for want of proper averments to give jurisdiction, with liberty to amend. The complainant has done so; and one of the defendants, D. K. Newell, has filed a plea which raises an issue as to the validity of the lien to enforce which is one of the objects of the bill.

The first and preliminary objection to the argument of this plea is, that the issue now raised was disposed of by the decision on the demurrer. The court does not so consider, as its action on it was limited to the question of jurisdiction. Again, the allegation in the bill was general; it was, that notice of the lien was recorded according to law. This general averment on the argument of the demurrer was taken as true. The plea now filed sets forth the notice, and specifies wherein the alleged invalidity exists. The court cannot consider the decision on the demurrer as precluding the defendant from setting up this defense in form of a plea. The grounds on which it rests are,—1st. That by the act of 12th April, 1850 (Comp. Laws, 808), no lien was given except upon buildings and wharves; and this was the only law in force at the date of the contract with Gordon & Kenyon. The bill in this case seeks to enforce a lien upon a canal. 2d. That the act of 17th May, 1853 (Comp. Laws, 811), was passed subsequent to the date of the contract, and after most of the work done by the complainant had been performed. This act was prospective, and could not retroact so as to confer a lien where none existed at the date of the contract. By these objections, it is apparent that the date of the contract is made the point of time which is to limit the operation of the act, and beyond which it could create no right. The conclusion drawn in the brief of defendants' counsel is, that "the legislature had no power to incorporate a new element into the contract, and create a lien on a canal where none existed at the date of the contract." With a view to sustain the theory that the lien affects the contract, it is urged, that the labor performed and materials furnished could only have been done and furnished under a contract. This is true; for no cause of action can arise ex contractu that is not founded on contract; but that may be verbal, in writing, or implied.

The case of Houghton v. Blake, 5 Cal. 240, cited by defendants, simply affirms the principle that the materials furnished must have been so by the express terms of the contract. A reference to the case of Bottomly v. Rector, etc., of Grace Church, 2 Cal. 90, adopted and relied on in the former case, will show that all that was decided is, that the statute never contemplated that a person should have the right of following the materials which he had sold in general terms, and obtain a lien upon any building to which the materials had been applied. The materials

must have been furnished to the particular building on which the lien was to be enforced by the terms of the contract in pursuance of which it was constructed. With a view to ascertain whether the lien under the law which creates it operates upon the contract in this case, it is necessary to examine the legislation of this state in relation to the liens of mechanics and other operatives.

The act of the legislature of 12th April, 1850 (Comp. Laws, 808), created a lien on buildings and wharves in favor of two classes of laborers. 1st. The first were master builders, mechanics, and all other persons furnishing labor or materials by contract with the owner himself. By the 7th section of this act, this class, to secure their lien must file in the recorder's office of the county in which the building or wharf is situated, before the expiration of sixty days from the completion of the work or repairs, notice of his intention to hold a lien upon the property declared by the act liable to the lien, specifically setting forth the amount claimed. It is also provided, that suit shall be brought to enforce the same within one year after the work is done or materials furnished, or within one year after the expiration of any credit which may have been given; but no lien shall continue for a longer term than two years from the time the work is completed, or the materials furnished, by any agreement to give credit. The second class of persons in favor of whom a lien is created, are contractors, journeymen, &c., performing labor or furnishing by contract with the masters or contractors, and between whom and the owner there is no privity of contract. This second class of persons, in order to fix their lien are to pursue the course prescribed by the second, third, and fourth sections of the act. By these, they are required, first to look to their employer, next to the owner, which latter is only liable in cases where notices have been served upon him in conformity with the statute. No period of notice to the owner by this second class is prescribed; and the construction which has been placed by the supreme court of this state upon this portion of the statute is, that it intended to provide for the first class an actual lien existing from the commencement of the work (in this construction this court coincides) until sixty days after its completion, leaving the second class their remedy by notice to the owner; and no time being fixed when such notice shall be given, that their lien attaches only upon the service thereof—that this mode of proceeding was intended to prevent litigation by substituting a proceeding in the nature of an attachment; and they put this class of cases on the same footing as ordinary attachments, in which the rule "qui prior est in tempore potior est in jure" obtains. Cahoon v. Levy, 6 Cal. 295.

The next act of the legislature of this state upon the subject of a mechanics' lien, is that of 17th May, 1853 (Comp. Laws, 811). It extends the lien for all labor done and materials furnished, to "bridges, flumes, or aqueducts constructed to create hydraulic power or for mining purposes; and gives such to all persons performing labor or furnishing materials for, or employment in, the construction of any such bridge," &c., subjecting it to the provisions and regulations as in and by said act of 12th April, 1850 (Comp. Laws, 811), are provided for buildings and wharves. It is a rule in the interpretation of statutes, that all in "pari materia," must be construed together. A fortiori, such should be the rule where, as in this case, the provisions and regulations of the previous law are expressly incorporated into the more recent statute. The effect in such case is, to make all the provisions of the old law part and parcel of the new, which are not repugnant, and which form portions of the provisions and regulations which regulate the lien.

The complainant rests his claim to a lien under the act of 17th May, 1853, for until the passing of that act no lien on a canal existed; but to sustain his claim he must show he complied with that law, and if he does so, he can be required to do no more. It is true that the legislature of this state on the 27th April, 1855 (Pamph. Laws 1855, p. 156), passed an act repealing the law of 12th April, 1850; but at the same time it expressly enacts, that "nothing herein contained in this act shall be deemed to apply to or affect any lien heretofore acquired," &c. By this latter act it is required that the notice of lien to be given shall contain a correct description of the property on which the lien is intended to be enforced. The act of 12th April, 1850, required a description of the property without using the word "correct." But this omission in the older act can give rise to no different construction in the interpretation of the two statutes. When the previous act prescribed a description of the property it is to be deemed that a correct one was as much required by its language as when the legislature in the subsequent law used the word, correct. It is only important to construe the language used in both acts with a view to enable us to arrive at the true intention of the law. To this comparison we will come hereafter when the objection made to the description of property given in this case in the notice of lien is to be considered.

Both acts, that of 12th April, 1850, and that of 17th May, 1853, annex the liens created by them to no contract; but to labor done and materials furnished. Whatever the nature of the contract, the character of the lien is not affected. The law does not alter or impair the obligation of any contract, the lien is founded upon the labor and materials. Going upon the idea, that "the laborer is worthy of his hire," the legislature make the result of his work the sole meritorious ground of the lien. If the act operated upon the contract made prior to the passing of it, and divested a vested right, it would be obnoxious to the

objection made to it on the ground that it is unconstitutional. To sustain that proposition, the case of People v. Hays, 4 Cal. 127, has been cited. That case was decided on two grounds. 1st. That by the terms of the act under consideration the act was not to take effect until July following, and consequently was by its saving clause to take effect in future. 2d. That previous to the passing of the act, the right had vested in the party, as purchaser from the sheriff, to receive an absolute deed for the property of which he had been divested by the subsequent law giving the right of redemption. The principle decided in the latter proposition is embodied in the case of McCracken v. Hayward, 2 How. [43 U. S.] 608. The act under consideration does not attach to the contract, it goes exclusively to the remedy. It may indirectly affect the contract; but it does not impair it, nor does it divest a vested interest under it. Most legislation as to the remedy, more or less affects the contract; though it may not to such extent as to invalidate the law. In McCracken v. Hayward, above cited, the supreme court of the United States say, "It is, however, not to be understood that, by that or any former decision of this court, all state legislation on existing contracts is repugnant to the constitution." As legitimate instances of the exercise of this power, they allude to the right of the legislatures of the states to pass recording acts, by which the elder grant shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts. The power to limit a remedy by barring the right of action, being remedial legislation, although it affects the contract, is constitutional. Id. In Bronson v. Kinzie, 1 How. [42 U. S.] 315, the same court say, "Undoubtedly a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may shorten the period of time within which claims shall be barred by the statute of limitations."

Now, each of foregoing instances in which it is admitted the state legislatures have a right to legislate, affect the contract to as great extent as does the act under consideration, which gives to a party to a contract an additional remedy,—a lien upon his work. In the case of Bronson v. Kinzie, 1 How. [42 U. S.] 316, the court further say, "And although a new remedy may be deemed less convenient than the old one, and may, in some degree, render the recovery of debts more tardy and difficult, yet it will not follow that the law will be unconstututional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract." It is difficult to perceive, how an act which gives an additional remedy to the holder of a contract can be said to impair its obligation. Of what vested right does it deprive the party? The obligation imposed upon him by its terms, was to pay for the work. It vested in him no right not to pay. Can the law which from motives of policy gives an additional remedy and security, be said to divest a right from him which he never possessed? The true distinction is, that what belongs to the remedy, if it does not impair the obligation of the contract, is within the legitimate limits of state legislation. The court cannot consider the law under consideration as unconstitutional, or having divested a vested right. Whether the law should be deemed to create a lien on any labor or materials done and furnished subsequent to the passage of it, is a question not now to be determined. That it does create a lien on all labor and materials done and furnished prior to the passing of it, there can be little doubt; and the plea admits that some portion of the labor and materials are in that category. Whatever be that portion is matter of proof on the trial of the case.

Another objection to the validity of the lien is, that the notice of lien filed by complainant was insufficient, on two grounds— 1. The description of the property in the notice of lien is inaccurate. 2. That if the complainant ever had a valid lien, he has lost it by a failure to bring suit in time. The act of 12th April, 1850, requires that the suit should be brought within one year after the work was done, which was not done in this case. As to the description of the property, we have seen that the act of 12th April, 1850, requires that notice of the intention to hold a lien on the property declared by that act shall be recorded, specifically stating the amount claimed. The act of 27th April, 1855, requires a correct description of the property to be given. No form is prescribed. Under the latter law the case of Montrose v. Connor, 8 Cal. 344, cited by defendant's counsel, was decided. The description of the property in the notice of lien in that case was in these words, "As a dwelling house lately erected by me for J. W. Connor, situated on Bryant street, between Second and Third streets, in the city of San Francisco, on lot —" In relation to such description the court say, "There are a number of lots on Bryant street between Second and Third streets, to any of which it would apply as well as to the one in question." That description of an individual object which was so inaccurate as to apply equally well to a number of objects, was decided not to be a correct description of the individual object which it was intended to identify. What is meant by a correct description? Does it mean a description by metes and bounds, and require the particularity demanded in a deed? The word "cor-

rect" is not a technical one. Its obvious meaning in a statute is, such description which identifies the individual object intended to be designated. Such object is accomplished in this case; the subject on which a lien is sought is "the works known as the South Fork Canal, near Placerville, in El Dorado county." If there was no object in existence at the time which answered to that description, the rule, "de non apparentibus et de non existentibus eadem est ratio," must apply, and the description must be deemed sufficiently "correct."

The next objection to the validity of the lien is, that the notice, after giving the information that it was intended to hold a lien on the specific work, does not state that the labor was done on, and the materials were furnished to, that work; but "that the same were for the use of the South Fork Company." The fact that they were so used is not required to be inserted in the notice, nor does it constitute a part of the description of the property. That is matter of allegation and proof, without which no recovery can be had. To that extent goes the case of Houghton v. Blake [supra], cited by defendant's counsel.

The last objection to the validity of the lien is, that if it ever existed, it has been lost by failure to bring a suit to enforce the lien within a year from the time the work was done. Now, there is a conflict as to the time when the work was done, and inasmuch as a plea is not, like an answer, deemed evidence, and the matter is one of avoidance, and as such, if embodied in an answer, must have been proved on the final hearing, it must be submitted to proofs on both sides. After a careful review of this case, the court has come to the conclusion that the plea must be overruled, and it is ordered accordingly.

[NOTE. On appeal to the supreme court the judgment was reversed in an opinion by Mr. Justice Swayne, because the circuit court held that the lien extended the entire length of the canal instead of limiting it to the upper s c-tion, where all the work was done. Mr. Justice Field, Mr. Justice Miller, and Mr. Justice Grier dissented, because they regarded the lien as extending to the whole canal, as much so as a lien for work upon a wing of a house extends to the entire building. 6 Wall. (73 U. S.) 561.

[A motion was afterwards made in the circuit court to carry into effect the mandate of the supreme court, and, in an opinion by Mr. Justice Field, it was held that the mandate of the supreme court must be promptly and implicitly obeyed, except so far as the enforcement thereof may be modified by events occurring subsequent to the period covered by the record in the supreme court. The obedience required is an intelligent, not a blind one. Where judgment has been obtained, and, pending a writ of error, no stay of proceedings having been obtained, the judgment is enforced, and the property of the defendant is sold, the purchaser acquires a good title, which cannot be divested by a reversal by the supreme court. The judgment being valid until reversed, and its enforcement not having been stayed, all persons relying on it are protected. Case No. 13,189.]